# In the United States Court of Federal Claims
## OFFICE OF SPECIAL MASTERS

```
* * * * * * * * * * * * * * * * * * *
ANDREW KOZEL,                        *
                                     *     No. 14-797V
                  Petitioner,        *     Special Master Christian J. Moran
                                     *
                                     *     Filed: April 2, 2018
v.                                   *
                                     *     Attorneys' fees; reasonable basis;
SECRETARY OF HEALTH                  *     waiver of objections to amount
AND HUMAN SERVICES,                  *
                                     *
                  Respondent.        *
* * * * * * * * * * * * * * * * * * *
```

<u>Andrew D. Downing</u>, Van Cott & Talamante, PLLC, Phoenix, AZ, for petitioner;
<u>Adriana R. Teitel</u>, United States Dep't of Justice, Washington, DC, for respondent.

## PUBLISHED DECISION AWARDING ATTORNEYS' FEES AND COSTS[1]

After his petition was dismissed, Andrew Kozel filed a motion for attorneys' fees and costs. Mr. Kozel is awarded nearly the full amount of his request, $56,835.24.

*        *        *

The petition alleged that Mr. Kozel suffered numerous injuries after he received a series of human papillomavirus ("HPV") vaccines on June 15, 2012, August 7, 2012, and December 27, 2012. <u>See</u> Petition, filed Sept. 2, 2014. The parties developed their cases including obtaining reports from expert witnesses. While the case was being scheduled for a hearing, Mr. Kozel decided not to proceed and filed a motion to dismiss his case. Mr. Kozel's action resulted in a

---

[1] The E-Government Act, 44 § 3501 note (2012) (Federal Management and Promotion of Electronic Government Services), requires that the Court post this decision on its website. Pursuant to Vaccine Rule 18(b), the parties have 14 days to file a motion proposing redaction of medical information or other information described in 42 U.S.C. § 300aa-12(d)(4). Any redactions ordered by the special master will appear in the document posted on the website.

decision, finding that he was not entitled to compensation.  Decision, issued Dec. 11, 2017, 2017 WL 6811903.  With the merits of Mr. Kozel's case resolved, the parties addressed attorneys' fees and costs.

Mr. Kozel filed a motion for attorneys' fees and costs on September 8, 2017. Mr. Kozel argued that he is eligible for an award of attorneys' fees and costs because he fulfills the statutory standard of good faith and reasonable basis.  As evidence for the reasonable basis for the claims set forth in the petition, Mr. Kozel pointed to the report from one of his treating doctors (Dr. Mielke), the report from Dr. Axelrod, the report from Dr. Nemechek, and the result of ANSAR testing. Exhibits 13, 14, 27, and 110.  As to the amount of attorneys' fees and costs, the motion sought $43,960.50 in attorneys' fees, $11,685.85 in attorneys' costs, and $209.89 in costs personally born by the petitioner.

The Secretary responded on September 22, 2017.  With respect to reasonable basis, the Secretary questioned whether the reports Mr. Kozel submitted satisfied the reasonable basis standard.  The Secretary focused particularly on Dr. Nemechek's work.  As to the amount of attorneys' fees and costs, the Secretary did raise one set of specific objections and otherwise recommended that the special master "exercise his discretion" when determining a reasonable award.  Resp't's Resp., filed Sept. 22, 2017, at 5.

Mr. Kozel submitted a reply.  He generally defended the reasonable basis for his claim and specifically supported the work Dr. Nemechek performed.  Pet'r's Reply, filed Sept. 27, 2017.  Because of a need to file another brief, Mr. Kozel sought an additional $1,329.00 in attorneys' fees.

This matter is now ripe for adjudication.

*     *     *

Because Mr. Kozel did not receive compensation, he must establish that the "petition was brought in good faith and there was a reasonable basis for the claim" before he can receive an award of reasonable attorneys' fees and costs.  42 U.S.C. § 300aa–15(e)(1).  As noted above, the Secretary questions whether reasonable basis is satisfied.[2]

---

[2] The Secretary has not challenged Mr. Kozel's good faith in filing his petition. Therefore, the undersigned finds that the petition was filed in good faith.

2

The parties' briefs do not propose interpretations of the term "reasonable basis." "Reasonable basis" is an evidentiary standard, meaning that petitioners fulfill this statutory requirement by submitting evidence. See Simmons v. Sec'y of Health & Human Servs., 875 F.3d 632, 636 (Fed. Cir. 2017) (stating that the reasonable factual basis is "an objective inquiry"). The evidentiary standard for reasonable basis is lower than the preponderance of the evidence standard. The type of evidence relevant to determining whether reasonable basis exists includes two forms of evidence the Vaccine Act mentions: medical records and medical opinions. See Carter v. Sec'y of Health & Human Servs., 132 Fed. Cl. 372, 380 (2017), citing 42 U.S.C. § 300aa-11(c).

Here, Mr. Kozel identifies the medical opinions of three doctors: Doctors Mielke, Axelrod, and Nemechek. These are taken up in sequence.

### Dr. Lynne R. Mielke

Dr. Mielke is board-certified by the American Board of Psychiatry and Neurology. She practices "integrative psychiatry," and treated Mr. Kozel for several years. Exhibit 13 (Dr. Mielke letter). In this context, she wrote a letter to Mr. Kozel's attorney, Mr. Downing, and explained some of Mr. Kozel's health problems, including "an autonomic nervous system dysfunction and an immune system imbalance." Id. at 2. At the end of her letter, Dr. Mielke stated that "it is more likely than not that [Mr. Kozel's] autonomic and immune system dysfunctions were caused by his receipt of, and reaction to, the [human papillomavirus] vaccine." Id.

In opposing Mr. Kozel's argument that reasonable basis supports his petition, the Secretary says relatively little about Dr. Mielke. At best, the Secretary remarks: "No board certified neurologist or immunologist has diagnosed petitioner with dysfunction." Resp't's Resp. at 4. Although the Secretary may legitimately distinguish a board-certified neurologist from a board-certified psychiatrist, the Secretary did not present any argument explaining why a board-certified psychiatrist is not qualified to opine that Mr. Kozel has "an autonomic nervous system dysfunction." And, even if the Secretary had made this argument, the Secretary would need to go one step further to demonstrate that a doctor's report was so blatantly erroneous that the petitioner was not justified in relying upon the report.

If the case had proceeded to a hearing on entitlement, Dr. Mielke's opinion may not have carried the day for Mr. Kozel. But, as noted above, the evidentiary

threshold for establishing reasonable basis is less than the preponderance of the evidence. Dr. Mielke's report crosses this line.

*Dr. David Axelrod*

Dr. Axelrod has presented opinions for petitioners in other cases, and Mr. Downing communicated with Dr. Axelrod in Mr. Kozel's case. Dr. Axelrod describes himself as a "clinical immunologist." Exhibit 14 at 1. Citing one of Mr. Kozel's underlying medical records, Dr. Axelrod asserted that Mr. Kozel suffered from an anxiety disorder. Id. at 2. Dr. Axelrod then put forth a theory to explain how the HPV vaccine can cause and did cause Mr. Kozel's anxiety disorder. Id. at 2-4. However, largely because of Dr. Nemechek's opinion, Mr. Kozel opted not to pursue a claim based upon Dr. Axelrod's theory. See Pet'r's Status Rep., filed Mar. 16, 2017 (not including Dr. Axelrod as a witness to testify at hearing).

In retrospect, Mr. Kozel's decision to move away from Dr. Axelrod was probably wise. Special masters have not found Dr. Axelrod persuasive and his report in this case seems to stray into topics on which Dr. Axelrod appears to lack expertise. But, once again, the reasonable basis analysis is not retrospective. At the time Dr. Axelrod presented his report, Dr. Axelrod did support at least a portion of the claims set forth in the petition and, therefore, constitutes objective evidence supporting reasonable basis.

*Dr. Patrick Nemechek*

Although Doctors Mielke and Axelrod were Mr. Kozel's experts originally, he ultimately relied upon Dr. Nemechek. Dr. Nemechek describes himself as a specialist in internal medicine whose practice "has centered on the diagnosis and treatment of autonomic-related disorders." Exhibit 27 at 1. Dr. Nemechek presented a series of reports. Exhibits 27, 103, 105, and 106. Dr. Nemechek was asked to file multiple reports because the undersigned had difficulty understanding Dr. Nemechek's opinion. Ultimately, it appears that Dr. Nemechek presented the theory that the HPV vaccinations, via an expansion in cytokines, caused autonomic dysfunction that was manifest in two ways: (1) neurogenic orthostatic hypotension / postural orthostatic tachycardia syndrome, and (2) small intestine bacterial overgrowth. The Secretary's two experts challenged Dr. Nemechek's opinion on multiple levels.

To support Dr. Nemechek's theory that Mr. Kozel suffered from autonomic dysfunction, Mr. Kozel traveled from his home near San Francisco, California, to

Dr. Nemechek's office near Phoenix, Arizona.  Dr. Nemechek performed ANSAR testing and the results, as interpreted by Dr. Nemechek, support a finding of autonomic dysfunction.  Exhibit 110.

One of the Secretary's experts questioned the usefulness of ANSAR testing. Exhibit J; see also Resp't's Status Rep., filed Aug. 16, 2016.  Mr. Kozel submitted material to support its validity.  See Pet'r's Status Rep. filed Aug. 9, 2016, at 2; exhibit 110 (Dr. Nemechek's supplemental report regarding ANSAR); Pet'r's Reply at 3 and associated exhibits.  The value of ANSAR testing, if any, was not resolved because the case did not proceed to a hearing on entitlement.

However, ANSAR testing has emerged as an issue with respect to reasonable basis.  The Secretary

> questions whether this circular loop of having petitioner's expert use a questionable diagnostic test to generate the results then relied on by the same expert to support his proposed vaccine injury and justify payment of the fees charged by that expert, as well as the other fees and costs incurred by petitioner's counsel, is consistent with the Act's reasonable basis standard.

Resp't's Resp. at 4-5.

The Secretary's objection goes too far, at least in this case.  Some evidence supports the usefulness of ANSAR testing.  There is at least enough evidence to show Mr. Kozel's attorney, who is not a medical doctor, that Dr. Nemechek, who is a medical doctor, had some reason for using ANSAR testing.  Thus, Dr. Nemechek's opinion supports a finding of reasonable basis.

On the other hand, if this pattern were to repeat in future cases, the Secretary could more credibly argue that Dr. Nemechek was engaging in dubious medical practices to promote financial gain through litigation in the Vaccine Program.  If the Secretary were to present some evidence, then the issue may need to be reconsidered.  Without this evidence, the undersigned is very reluctant to find misconduct.[3]

---

[3] While the motion for attorneys' fees and costs was pending, another special master found Dr. Nemechek had misrepresented qualifications on his curriculum vitae and otherwise was not persuasive.  Combs v. Sec'y of Health & Human Servs., No. 14-878V, 2018 WL

Dr. Nemechek's opinions are just some of the justification for finding that Mr. Kozel's claim was supported by reasonable basis.  Mr. Kozel has additional support from Dr. Mielke and Dr. Axelrod, as explained above.  Consequently, Mr. Kozel is eligible for an award of attorneys' fees and costs.

With respect to the amount of attorneys' fees and costs, the Secretary pointed out that Mr. Kozel is requesting reimbursement for costs of the ANSAR testing and the costs associated with Mr. Kozel's trip from his home to Dr. Nemechek's office.  Resp't's Resp. at 4 n.3.  Mr. Kozel largely did not justify these charges.  At best, Mr. Kozel remarked that the reason Mr. Kozel did not seek this treatment with his usual doctors "was fully discussed at multiple status conferences."  Pet'r's Reply at 2.  However, the undersigned does not recall any discussion.

In any event, the costs for medical tests should be submitted to insurance for reimbursement.  See Ceballos v. Sec'y of Health & Human Servs., No. 99-97V, 2004 WL 784910, at *13-14 (Fed. Cl. Spec. Mstr. Mar. 25, 2004); see also Fuesel v. Sec'y of Health & Human Servs., No. 02-95V, 2014 WL 1379241, at *5 (Fed. Cl. Spec. Mstr. Mar. 19, 2014) (absent evidence that insurance would not cover cost of medical testing, special master could not determine if the cost for proposed medical testing was reimbursable as an item of attorneys' fees and costs).  If Dr. Nemechek did not submit the tests for reimbursement to an insurance company because the insurance company would not reimburse this expense, then there may be a concern about the legitimacy of the testing.  Consequently, the $350 that Dr. Nemechek has charged for the testing is removed.  On the other hand, insurance companies do not routinely reimburse for travel expenses.  Therefore, the costs associated with the travel are allowed.

Other than the notation about expenses associated with ANSAR testing, the Secretary did not interpose any other specific objections.  The requests are otherwise reasonable.

Accordingly, the following amounts are reasonable:

---

1581672 (Fed. Cl. Spec. Mstr. Feb. 15, 2018).  Because Mr. Downing appears to have learned these facts about Dr. Nemechek in Combs after Dr. Nemechek was retained in Mr. Kozel's case, Combs does not affect the outcome of the pending motion in this case.  The reasonableness of using Dr. Nemechek in future cases is debatable.

| | |
|---|---|
| Attorneys' Fees in Original Request | $43,960.50 |
| Attorneys' Fees in Supplemental Request | $1,329.00 |
| TOTAL Attorneys' Fees | $45,289.50 |
| | |
| Attorneys' Costs Requested | $11,685.85 |
| Reduction for ANSAR testing | ($350.00) |
| TOTAL Attorneys' Costs | $11,335.85 |
| | |
| Petitioner's Costs | $209.89 |

\*     \*     \*

The total amount awarded in attorneys' fees and costs is $56,835.24.  This amount shall be paid as follows:

**A lump sum of $56,625.35 in the form of a check made payable to petitioner and petitioner's attorney, Andrew Downing, and**

**A lump sum of $209.89 in the form of a check made payable to petitioner.**

These amounts represent reimbursement attorneys' fees and other litigation costs available under 42 U.S.C. § 300aa-15(e).  In the absence of a motion for review filed pursuant to RCFC Appendix B, the clerk of the court is directed to enter judgment herewith.[4]

**IT IS SO ORDERED**.

s/Christian J. Moran
Christian J. Moran
Special Master

---

[4] Pursuant to Vaccine Rule 11(a), entry of judgment can be expedited by the parties' joint filing of notice renouncing the right to seek review.